883 A.2d 449

**Joel M. HOLLAND, Heather L. Holland, Minors, by Theresa L. Holland, Parent and Natural Guardian, and Theresa L. Holland, in her right, Appellees.**

v.

**Edward E. MARCY, Appellant,**

**Joel R. Holland, Appellee.**

Supreme Court of Pennsylvania.

Argued March 1, 2004.

Decided Sept. 28, 2005.

Gregg Alan Guthrie, for Pennsylvania Defense Institute.

Joanna Kay Budde, Erie, for Edward E. Marcy.

Anthony John Sciarrino, for Joel M. Holland, et al.

Matthew Stephen Crosby, Scott B. Cooper, Harrisburg, for Pennsylvania Trial Lawyers Association.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

■■■■■■■■

## OPINION

Justice BAER.

This Court granted review of this case in order to address the division between the Superior Court and the Commonwealth Court on the following question of law: Whether full tort remedies are available to children of an owner of a registered but uninsured vehicle or whether they, like their parent, may only pursue limited tort remedies pursuant to Section 1705 of the Motor Vehicle Financial Responsibility Law (the "MVFRL"), 75 Pa.C.S. § 1705?[1] In the case *sub judice*, the Superior Court held that the plain language of Section 1705 dictates that children injured in their parent's registered but uninsured vehicle may obtain full tort remedies under subsection (b)(3)[2] because the language of subsection (a)(5)[3] only specifies that the uninsured *owner* is deemed to have chosen limited tort coverage. *Holland v. Marcy*, 817 A.2d 1082 (Pa.Super.2002). Similarly, the Superior Court previously concluded that full tort remedies were available to the wife of the owner of a registered but uninsured vehicle

---

1. The fundamental difference between the full tort and limited tort options is that an individual covered by a full tort policy may seek noneconomic damages, including damages for pain and suffering, which are not available under a limited tort policy, unless the claim fits within an enumerated exception, such as serious injury. 75 Pa.C.S. § 1705(d).

2. Section 1705(b)(3) provides as follows:
   (b) Application of tort options.—
   * * * * *
   (3) An individual who is not an owner of a currently registered private passenger motor vehicle and who is not a named insured or insured under any private passenger motor vehicle policy shall not be precluded from maintaining an action for noneconomic loss or economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law.
   75 Pa.C.S. § 1705(b)(3).

3. Section 1705(a)(5) provides as follows:
   § 1705. Election of tort options
   (a) Financial responsibility requirements.—
   * * * * *
   (5) An owner of a currently registered private passenger motor vehicle who does not have financial responsibility shall be deemed to have chosen the limited tort alternative.
   75 Pa.C.S. § 1705(a)(5).

when the wife did not have any ownership interest in the vehicle. *Ickes v. Burkes*, 713 A.2d 653 (Pa.Super.1998). Conversely, when addressing a similar fact pattern, the Commonwealth Court looked at the legislative intent of the 1990 amendments to the MVFRL, which included Section 1705, and at the language of subsections (a)(5) and (b)(2)[4] to determine that children of an owner of a registered but uninsured vehicle were bound by their parent's deemed selection of limited tort. *Hames v. Philadelphia Housing Authority*, 696 A.2d 880 (Pa.Cmwlth.1997). For the following reasons, we hold that Section 1705 does not bind the children of an owner of a registered but uninsured vehicle to limited tort remedies despite the fact that their parent is deemed to have chosen the limited tort option.[5]

The facts of the case are straightforward and uncontested. Theresa Holland and Joel R. Holland were divorced, and the parents of minor Appellees, Joel and Heather Holland. Theresa owned the car involved in the accident leading to this case. At the time of the accident, Joel R. was driving, accompanied by Theresa and the children, Joel and Heather. Prior to the time of the accident, Theresa had purchased two insurance policies on the subject automobile. At the time of

4. Section 1705(b)(2) provides as follows:

(b) Application of tort options.—
* * * * *
(2) The tort option elected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy. In the case where more than one private passenger motor vehicle policy is applicable to an insured and the policies have conflicting tort options, the insured is bound by the tort option of the policy associated with the private passenger motor vehicle in which the insured is an occupant at the time of the accident if he is an insured on that policy and bound by the full tort option otherwise. 75 Pa.C.S. § 1705(b)(2).

5. While we recognize that the language of Section 1705(a)(5) specifically refers to "[a]n owner of a currently registered private passenger motor vehicle who does not have financial responsibility," we will refer to such an owner, for ease of discussion, as "an owner of a registered but uninsured vehicle," without determining whether the owner could meet the requirement of financial responsibility by means other than by purchasing an insurance policy for the vehicle.

each purchase, Theresa elected the limited tort option. Both policies had expired prior to the time of the accident, and thus, while Theresa continued to own the registered car when the accident occurred, she was uninsured.

This incident happened when Appellant Edward E. Marcy, while traveling in an easterly direction on State Route 20 in Erie County, made an abrupt left turn from the right hand lane and collided with the Hollands' car which was traveling in the same direction in the left hand lane. The children received treatment for injuries resulting from the accident.[6]

The Hollands filed suit against Marcy to recover economic and non-economic damages. After partial discovery, Marcy filed a motion for summary judgment.[7] He asserted that the Holland children were precluded from seeking non-economic damages because the children's injuries were not serious, and recovery was thus impermissible because their mother, Theresa Holland, was the owner of a registered but uninsured vehicle, and therefore was deemed to have chosen the limited tort alternative under Section 1705(a)(5). He contended that the children were bound to their mother's deemed choice under Section 1705(b)(2) because they were "insureds," as defined in Section 1705(f).[8] The Honorable Shad Connelly

6. Joel Holland suffered a laceration to his forehead, which allegedly resulted in a permanent scar, and a cervical strain and sprain. Heather Holland received a cervical strain and sprain, contusions to her right knee and her face, and suffers recurrent nose bleeds allegedly as a result of the accident. Apparently, a third sibling was involved in the accident but sustained no injuries. This Court also granted review on Appellees' question of whether Joel Holland's injuries constitute serious injuries and thus permit him to recover non-economic damages even if he is bound by the limited tort option. Because we conclude that Joel and his sister may seek full tort remedies despite the deemed choice of their mother, the issue of the severity of Joel's injuries is moot and will not be addressed in this opinion.

7. Marcy also filed a motion to join Joel R. Holland, the driver and father of the children, as an additional defendant. The docket entries reveal that Mr. Holland was served by publication; however, according to the Superior Court opinion, Mr. Holland never appeared or raised any defenses. Furthermore, he has not been involved in the appeal before this Court.

8. Section 1705(f) defines "insureds" as follows:

presided over oral arguments on September 27, 2000, and granted Marcy's motion for summary judgment on January 5, 2001.

The Hollands appealed to the Superior Court. The Honorable Joan Orie Melvin authored the majority opinion for a fractured *en banc* court, reversing the trial court, concluding that full tort remedies were available to the children, and finding that Section 1705(a)(5) bound only Theresa, as the owner of the registered but uninsured vehicle to the limited tort option. The majority rejected the reasoning of the Commonwealth Court in *Hames*, concluding that the court failed to provide an analysis of the relevant sections and definitions provided in the MVFRL. Moreover, the majority found that the Commonwealth Court improperly equated the term "named insured" in subsection (b)(2) with "owner" in (a)(5) and thus disregarded the statutory definitions of the terms and created a fictitious insurance policy under which the children would be "insureds" subject to the limited tort option. The majority observed that the Commonwealth Court apparently reached this conclusion in part to avoid providing greater rights to the children of uninsured motorists than to children of financially responsible parents who opted for limited tort coverage. Judge Orie Melvin rejected the suggestion that the children of uninsured motorists would be better off than children whose parent chose limited tort coverage due to a number of other consequences resulting from a parent's failure to insure a vehicle, such as criminal penalties and fines, lack of uninsured motorist coverage, and potential tort claims against the parent, if the parent was at fault in an accident.

Instead, the majority followed the Superior Court's precedent in *Ickes*, which examined subsections (b)(2) and (b)(3) along with (a)(5) and the definition of "named insured" in subparagraph (f) and concluded that the clear and unambigu-

"Insured." Any individual residing in the household of the named insured who is:
(1) a spouse or other relative of the named insured; or
(2) a minor in the custody of either the named insured or relative of the named insured.
75 Pa.C.S. § 1705(f).

ous language of (b)(2) relates only "to situations where there is an insurance policy in place and thus a named insured under that policy." *Holland*, 817 A.2d at 1088. The court concluded that where there is no insurance policy, there can be no "named insured." Therefore, an "owner" under (a)(5), who necessarily is not covered by an insurance policy, cannot be a "named insured" under (b)(2) and thus, (b)(2) cannot apply to the children of an "owner" who is not a "named insured."

The majority further found that reaching a decision which binds the children would not advance the purpose of Section 1705(a)(5), which is to punish the owner of the uninsured vehicle.[9] The court noted that a number of other Superior and Commonwealth Court cases have interpreted other sections of the MVFRL punishing "owners" and concluded that the term "owner" was limited to individuals who have an "actual cognizable property right in the vehicle as well as *de facto* indicia of ownership." *Id.*, quoting *Bethea v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 407 Pa.Super. 57, 595 A.2d 122, 126 (1991) (reversing summary judgment for defendant where questions of fact remained as to whether wife had sufficient indicia of ownership to preclude recovery of uninsured motorist benefits under the Assigned Claims Plan which excludes uninsured owners pursuant to 75 Pa.C.S. § 1752(a)(3)); *see also Habbyshaw v. Dep't of Transp., Bureau of Driver Licensing*, 683 A.2d 1281 (Pa.Cmwlth.1996) (requiring that husband have sufficient indicia of ownership in vehicle titled in wife's name before suspending husband's license pursuant to Section 1786 which details penalties for failing to obtain insurance); *Allen v. Merriweather*, 413 Pa.Super. 410, 605 A.2d 424 (1992) (finding that husband had sufficient indicia of ownership to trigger the denial of recovery of first party benefits under Section 1714); *Ibarra v. Prudential Property & Casualty Ins. Co.*, 402 Pa.Super. 27, 585 A.2d 1119 (1991) (providing first party benefits, despite the prohibition in Section 1714, to wife who did not have ownership

---

9. In this case, the parties do not suggest that the children are "owners" of the uninsured vehicle.

interest in vehicle, even though estranged husband failed to obtain insurance).

In compliance with the rules of statutory construction, specifically 1 Pa.C.S. § 1921(b),[10] the majority of the Superior Court asserted that because the words of Section 1705 are clearly defined, judicial construction is not necessary. The majority reasoned that the minors are clearly not owners nor do they have any indicia of ownership in the pertinent vehicle, and should not be restricted by Section 1705(a)(5)'s deemed election of limited tort. Further, as they are neither "owners" for purposes of Section 1705(a)(5) nor "insureds," as defined by Section 1705(f), under an insurance policy where a "named insured" has chosen limited tort for purposes of Section 1705(b)(2), then, under Section 1705(b)(3), they may pursue full tort remedies.

Judge Hudock filed a concurring statement in which he joined the statutory analysis of the majority but asserted his belief that the result was unfair in that it "affords greater rights to minor children whose parents flout the law by not buying insurance than to children of more responsible parents who purchase liability insurance, but who chose the limited tort option." *Holland*, 817 A.2d at 1092 (Hudock, J., concurring). Judge Hudock did not accept the rationale offered by the majority concerning the other benefits provided to children whose parents obtain limited tort insurance, and instead called on the legislature to correct what he perceived as an injustice. Judge Todd also filed a concurring statement in which she agreed with Judge Hudock that an inconsistency existed in that minor children of irresponsible drivers are afforded greater rights than are the children of responsible parents who purchase limited liability insurance, but declined to join the concurrence due to her belief that, while the

**10.** 1 Pa.C.S. § 1921(b) provides as follows:

§ 1921. Legislative intent controls
* * * * *
(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921(b)

MVFRL was designed to require financial responsibility of motorists, the public policy of the Commonwealth is to protect "the rights of children, even from their parents' ability to compromise those rights, whether purposefully or inadvertently." *Id.* at 1093 (Todd, J., concurring).

Judge Bowes filed a dissenting opinion joined by Judges Johnson and Lally–Green. The dissent stated that the majority's conclusion was contrary to the legislative intent and argued for a remand on the issue of whether Joel's injuries were "serious." Judge Bowes argued that the words "deemed to have chosen" in subsection (a)(5) express "the legislature's intent to provide for the fictionalized creation of an insurance policy under which the uninsured owner of a vehicle has affirmatively selected the limited tort option." *Holland,* 817 A.2d at 1095 (Bowes, J., dissenting). Thus, she argued that the uninsured owner is deemed to be a "named insured" under a limited tort policy which would bind the owner's children as "insureds" under subsection (b)(2).

The dissent asserted that the majority's approach does not give meaning to the term "have chosen" and instead interprets it as if the statute used the term "bound by" as used in subsection (d).[11] She argues that if the legislature had desired to restrict 1705(a)(5) to only the owner then they would have used the narrower term "bound by" rather than "deemed to have chosen" which provides for a fictionalized insurance policy under which the owner can be considered a "named insured." The dissent further argued that its reading of the statute serves the purpose of the 1990 amendments, which was to address the increasing costs of insurance by providing incentives to individuals to purchase insurance and to decrease the number of uninsured motorists. Although the dissent

11. (d)Limited tort alternative.—
   Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is **bound by** the limited tort election shall be precluded from maintaining an action for any noneconomic loss. . . .
   75 Pa.C.S. § 1705 (emphasis added).

noted that one of the purposes of the MVFRL was to provide coverage to injured parties, "[t]o allow unlimited recovery to the child of a parent who has placed no money into the premium pool, but to limit recovery to the child of a parent who has paid into that pool but elected the limited tort option does not comport with our obligation to interpret this Act in light of its dual and equally important objectives." *Holland*, 817 A.2d at 1096 (Bowes, J., dissenting). The dissent, like Judge Hudock, rejected the majority's assertion concerning the additional repercussions of failing to obtain insurance. These various opinions frame the legal issues that divided the Superior and Commonwealth Courts, and now are before this Court.

In accordance with Judge Bowes's dissent in the case *sub judice* and the Commonwealth Court in *Hames*, Marcy argues that Section 1705(a)(5) and (b)(2) bind the children of an owner of a registered but uninsured vehicle to the owner's deemed election of the limited tort option. He asserts that to permit them to recover non-economic damages would be in violation of the intent and policy underlying the MVFRL, in that it would provide an incentive to parents who decide consciously to remain uninsured in order to provide their children with full tort remedies. Moreover, as mentioned above, he argues that it would provide the children of registered but uninsured owners with benefits in excess of those provided to responsible parents who choose the limited tort option.[12] In contrast, the Hollands assert that the Superior Court in the case *sub judice* correctly determined that the clear and unambiguous language of Section 1705 did not limit the Holland children to limited tort recovery, but rather provided for recovery of non-economic damages pursuant to subsection (b)(3) because the children were not owners, named insureds or insureds.[13]

As all the parties have conceded, the issue before the Court is a question of statutory interpretation and thus is a

12. The Pennsylvania Defense Institute filed an amicus brief in support of Marcy.

13. The Pennsylvania Trial Lawyers Association filed an amicus brief in support of the Hollands.

pure question of law subject to our plenary review. *See Hoffman v. Troncelliti,* 576 Pa. 504, 839 A.2d 1013, 1015–16 (2003). As in all cases of statutory interpretation, our goal is to ascertain the intent of the General Assembly in adopting the statute. 1 Pa.C.S. § 1921(a). In doing so, we must, if possible, give effect to all the provisions of a statute. 1 Pa.C.S. §§ 1921, 1922. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only when the words are ambiguous may we look to the general purposes of the statute, legislative history, and other sources in an attempt to determine the legislative intent. 1 Pa.C.S. § 1921(c). In construing a statute, the courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage. Furthermore, we should avoid construing a statute in such a way as would lead to an absurd result. 1 Pa.C.S. § 1922. Additionally, statutes which apply to the same class of persons should be read, where possible, in *pari materia.* 1 Pa.C.S. § 1932. As with all statutes not contained in the categories described in 1 Pa.C.S. § 1928(b)[14], the MVFRL must be liberally construed to give effect to its purposes and promote justice. 1 Pa.C.S. § 1928(c).

We agree with the Superior Court's conclusion that the language of Section 1705 is clear and unambiguous. We reject the reasoning of the Superior Court dissent in the case *sub judice* and the Commonwealth Court in *Hames* and instead conclude that the language of subsection (a)(5) only applies to "[a]n owner of a currently registered private passenger motor vehicle who does not have financial responsibility." 75 Pa.C.S. § 1705(a)(5). In *Hames,* the Commonwealth

14. The classes of statutes to be strictly construed include the following: penal provisions; retroactive provisions; provisions imposing taxes; provisions conferring the power of eminent domain; provisions exempting persons and property from taxation; provisions exempting property from the power of eminent domain; provisions decreasing the jurisdiction of a court of record; and provisions enacted finally prior to September 1, 1937 which are in derogation of the common law. 1 Pa.C.S. § 1928(b).

Court failed to take into account the distinction between an "owner" and a "named insured" which the General Assembly took pains to distinguish. Section 1705(f) specifically defines a "named insured" as "[a]ny individual identified by name as an insured in a policy of private passenger motor vehicle insurance." 75 Pa.C.S. § 1705(f). Had the legislature intended to equate the two terms they could have specified such in either subsection (a)(5) or (f) by defining a "named insured" to include both individuals actually named in an insurance policy and those deemed to have chosen the limited tort option pursuant to 1705(a)(5), or by specifying that an uninsured owner will be deemed to be a named insured in a limited tort insurance policy.[15] This Court may not amend the statute but instead must examine the statute as drafted by the legislature. We, thus, refuse to expand the meaning of the words used by the legislature which clearly state that the owner is "deemed to have chosen the limited tort alternative" to mean that the owner is deemed to be a "named insured" on a limited tort

**15.** We additionally note that the legislature, in fact, did specify clearly when it intended the choice of one individual to bind others. In every other category addressed by Section 1705(a) other than (a)(5) which addressed uninsured owners, the General Assembly specifically referenced the fact that the decision of the named insured (or the insurance applicant in (a)(4)) binds other household members. *See* 1705(a)(1)(A) ("A. 'Limited Tort' Option—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits **your right and the right of members of your household** to seek financial compensation for injuries caused by other drivers."); 1705(a)(1)(B) ("B. 'Full Tort' Option—The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for **you and the members of your household** to seek financial compensation for injuries caused by other drivers."); 1705(a)(3) ("If a named insured has not responded to either notice ..., **the named insured and those he is empowered by this section to bind** by his choice are conclusively presumed to have chosen the full tort alternative."); 1705(a)(4) ("Each insurer, prior to the first issuance of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall provide each applicant with the notice required by [1705(a)(1)(A) and (B) quoted above.]") (emphasis added). Furthermore, Section 1705(b)(2) states, "the tort option elected by a named insured shall apply to all insureds under the private passenger motor vehicle policy...." 75 Pa.C.S. § 1705(b)(2). Similar reference to the ability of the uninsured owner's deemed choice to affect the rights of household members is conspicuously missing from Section 1705(a)(5).

insurance policy so as to trigger subsection (b)(2) and bind the children of the owner to the limited tort option.[16]   Therefore, the children clearly fall within Section 1705(b)(3) and may pursue economic and non-economic damages in that the parties do not dispute that the children were not owners of an uninsured vehicle and that neither child was a named insured or insured under any other actual private passenger motor vehicle policy.

Not only is the language clear, but it is consistent with other provisions of the MVFRL which punish only the owner. *See* 75 Pa.C.S. §§ 1714 ("An owner of a currently registered motor vehicle who does not have financial responsibility ... cannot recover first party benefits."), 1752 (preventing recovery from the Assigned Claims Plan by owners), 1786(d) and (f)

**16.**   The responsive opinions in this Court and the fractured opinions in the Superior Court below evince that reasonable minds may differ as to whether the legislature intended to bind the children of owners of registered but uninsured vehicles to limited tort coverage in the same way it bound children of parents who affirmatively elect limited tort coverage.   Unlike the concurring and dissenting justices, we cannot state with certainty that the provision of full tort benefits to the children of owners of registered but uninsured vehicles would undermine the legislative purpose of premium reductions by adding significant cost to insurance premiums of other Pennsylvanians or by inducing those who currently have chosen limited tort policies to abandon their current insurance, and all the inherent benefits, in order to secure full tort benefits for their children.   We find such a theoretical hypothesis necessarily suspect given the many benefits that insurance provides and the limited number of children affected by this decision, which only applies to those children who suffer non-serious injuries, because even if they were deemed to be bound by limited tort, seriously injured children of uninsured owners, like others bound by limited tort, would have a right to seek damages for pain and suffering. *See* 75 Pa.C.S. § 1705(d).

Moreover, we respectfully disagree with the dissent that the clear language of Section 1705(a)(5) becomes ambiguous when read in *pari materia* with Section 1705(d).   Instead, as noted previously in this opinion and in the concurring opinion, we conclude that the clarity of Section 1705(a)(5) and (b)(3) is reinforced when read in *pari materia* with the other subsections of Section 1705, discussed above, *see also* Concurring Opinion Op. at 214–16, 883 A.2d at 461, as well as other sections of the MVFRL, *supra* at 209–11, 883 A.2d at 458.   Because the legislature painstakingly defined the terms it used and repeatedly designated when it would bind anyone other than the owner, we must leave it to that body to determine whether the clear language of Section 1705 must be altered to better effect legislative intent.

(punishing owners of uninsured vehicles by suspending the registration of the vehicle, the operating privileges of the owner, and imposing a $300 fine for a summary criminal offense). We further note that our intermediate appellate courts have refused to apply the penalties of these sections to individuals who do not possess an ownership interest in a registered but uninsured vehicle. *See, supra* at 199–202, 883 A.2d at 452–53.

Although the clarity of the language does not require us to look to the purposes of the statute, we observe that the language is entirely consistent with such purposes. This Court has previously interpreted subsections of Section 1705 and noted that a primary concern of the legislature in passing the MVFRL was the rising cost of consumer automobile insurance "created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid." *Hoffman,* 839 A.2d at 1018 (citations omitted). Section 1705(a)(5) rectifies this problem by providing a disincentive to uninsured owners in that they will be deemed to have chosen the limited tort option.

The restriction on the owner in (a)(5) is but one of a number of disincentives that clearly outweigh the suggestion that the children of uninsured owners will be "better off" than children of parents who choose the limited tort option. In cases such as the present where the uninsured owner-parent is not at fault in the accident, the parent and the children would not have an insurer from which they could recover benefits provided by uninsured/underinsured coverage in the event that the tortfeasor was not insured. Furthermore, the owner of a registered but uninsured vehicle would be denied recovery of first party benefits under any other policy, which include medical, income loss, accidental death, and funeral benefits under Section 1714 or denied recovery under the Assigned Claims Plan pursuant to Section 1752(a)(3). Moreover, the owner would be subject to the penalties, including criminal charges, fines, and suspension of operating privileges, under Section 1786. These disincentives could result in significant

costs to the uninsured owner, which would in turn cause hardships on the family. Additionally, in cases where the uninsured owner is at fault, the family's assets will be at risk in any claim by the injured party and, unlike children of an insured owner, the uninsured's children would be unable to collect first party benefits under Section 1713 [17] as they are not named insureds, insureds, or occupants of an insured vehicle.[18]

Additionally, we note that this Court has previously concluded that the MVFRL should be "accorded a liberal construction, in favor of the insured" and that the legislative history suggests that the General Assembly made a "conscious attempt to rule in favor of the full tort alternative" when there was a question as to which coverage applied. *Hoffman*, 839 A.2d at 1019, n. 8. Therefore, although we need not resort to statutory construction due to the clear language of the statute, we are further satisfied that the clear language is not contrary to the purposes of the MVFRL or to the majority of the decisions applying the MVFRL. For all the foregoing rea-

---

**17.** **§ 1713. Source of benefits**

(a) **General rule.**—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first party benefits against applicable insurance coverage in the following order of priority:

(1) For a named insured, the policy on which he is the named insured.

(2) For an insured, the policy covering the insured.

(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury.

75 Pa.C.S § 1713.

**18.** Although the children may have a claim to medical benefits and additional benefits under the Assigned Claims Plan, 75 Pa.C.S. §§ 1751–1757, the benefits available under the Assigned Claims Plan do not encompass the first party benefits available through an insurance policy due to the $5,000 and $15,000 caps and the exclusion of income loss benefits, accidental death benefits and funeral benefits. *See Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 89 (Pa.1995).

sons, we hold, under the facts of this case, that 1705(a)(5) does not preclude the children of an owner of a registered but uninsured vehicle from maintaining actions for non-economic damages and affirm the decision of the Superior Court reversing the trial court's grant of summary judgment in favor of appellee-defendant Marcy and remanding for further proceedings.

Justice NEWMAN files a concurring opinion in which Justice NIGRO joins.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE joins.

## CONCURRING OPINION

Justice NEWMAN.

This is a situation where applying the plain language of one section of a statute leads to an absurd result, which is dissonant with the purpose of the statutory scheme in its entirety. I join in the result that the Majority reaches because of the unambiguous words of Section 1705(b)(3) of Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1705(b)(3). By holding that the children of an owner of a registered but uninsured vehicle are not bound to limited tort remedies despite the fact that their parent is deemed to have chosen the limited tort option, this Court confers greater benefits on children of parents who have not maintained financial responsibility than on those with financially responsible parents. Nevertheless, as the Majority states, "the clarity of the language does not require us to look to the purposes of the statute." Majority Opinion at 207–09, 883 A.2d at 457. I write separately to express my opinion that I find it difficult to believe that the legislature could have intended this outcome when it provided for the election of tort options and financial responsibility at Section 1705 of the MVFRL.[1]

I believe that our holding today produces a result that directly opposes the goal of the MVFRL. We have held that

1. 75 Pa.C.S. § 1705.

"the legislative history of the MVFRL indicates that the primary concerns of the General Assembly in repealing the No-fault Act and enacting the MVFRL were the spiraling cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. *See* Senate Journal, Oct. 4, 1983, 1142–53; House Journal, Dec..13, 1983, 2139–59." *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154, 1157–58 (1994) (internal citations omitted).[2]

Had Theresa Holland complied with the mandate of the financial responsibility law, and purchased insurance with the limited tort option, her children would have been limited by her choice and unable to pursue noneconomic damages. Because Holland drove without insurance, and paid no premium whatsoever, her children are now entitled to pursue noneconomic damages, in the same way they would have had their mother bought the full tort option. Stated most simply, the direct result of the Majority's decision is to encourage and reward failure to comply with the law, an outcome that the legislature surely did not intend when it implemented the MVFRL. While I am sympathetic to the plight of some families who may be unable to afford automobile insurance, even with the lower premium charged for the limited tort option, the fact is that the MVFRL requires it. To comply with the law, an individual need not buy full tort and can maintain financial responsibility by choosing the limited tort option. However, the problem in this case is that Theresa Holland did neither; rather, she drove without insurance. The inability to afford automobile insurance does not allow for an exception to the requirement of maintaining financial responsibility.

Section 1705(b)(3) states that "**[a]n individual who is not an owner of a currently registered ... vehicle and who is not a named insured ... shall not be precluded from maintaining an action for noneconomic loss ....**" 75 Pa.C.S. § 1705(b)(3) (emphasis added). The Majority applied

---

**2.** Although *Windrim* involved an exclusionary clause in a contract of insurance, its reference to legislative history is germane to this case.

the literal wording of this Section, which is the only way this Court can read it because the words are clear. This requires us to determine that the Holland children are entitled to the full tort option because they do not own a car and are not named insureds, since their mother drove an uninsured car. Because it is true that the Holland children did not own the registered uninsured car, they are not precluded from maintaining an action for noneconomic loss.

I note that although the words in Section 1705(b)(3) are clear, the fact is that the Superior Court and the Commonwealth Court reached two directly opposite holdings in *Ickes v. Burkes,* 713 A.2d 653 (Pa.Super.1998), and *Hames v. Philadelphia Hous. Auth.,* 696 A.2d 880 (Pa.Cmwlth.1997). In *Ickes,* the Superior Court held that full tort remedies were available to the wife of the owner of a registered but uninsured vehicle where the wife did not have an ownership interest in the vehicle. In *Hames,* the Commonwealth Court concluded that children of an owner of a registered but uninsured vehicle were bound by their mother's deemed selection of the limited tort option. I believe that these two conflicting determinations reflect the dilemma that this matter presents—applying the literal words of one section of the statute yields a result that the legislature likely did not intend to govern the outcome in the instant case. The fractured Superior Court Opinion in this matter, too, indicates the difficulty of reconciling the words of Section 1705(b)(3) with the intent of the MVFRL. *Holland v. Marcy,* 817 A.2d 1082 (Pa.Super.2002).

Although the clear wording of Section 1705(b)(3) calls for the result that the Majority articulates, I believe that the legislature did not intend this outcome, because the legislature "does not intend a result that is absurd, impossible of execution, or unreasonable." 1 Pa.C.S. § 1922(1). It is my opinion that the legislature likely designed this Section to apply only to individuals who have no connection to either cars or insurance and who, however, have had the misfortune of being involved in an accident that was the fault of another.

The Majority correctly points out that the issue before the Court is one of statutory construction, and, as such, is a

question of law subject to our plenary review. *Hoffman v. Troncelliti,* 576 Pa. 504, 839 A.2d 1013, 1015–16 (2003). Section 1705(a) deals with car owners and the choices they make, or fail to make, regarding the election of tort options.

I do not believe that the legislation was promulgated to bestow greater benefits on children of the uninsured than on those whose parents purchased insurance. The Majority intimates that providing full tort benefits to children of uninsured parents will not contribute to escalating insurance costs, labeling that a "theoretical hypothesis," which is "necessarily suspect," due to a lack of record evidence regarding the addition of costs to the system. Majority Opinion at 207 n. 15, 883 A.2d at 456 n. 15. I maintain that there can be little doubt that allowing recovery of full tort remedies in the absence of the payment of any premium adds costs to the system. In *Windrim,* we stated that "in passing the [MVFRL], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the **substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid.**" *Windrim,* 641 A.2d at 1156 (internal citation omitted) (emphasis added). Therefore, I take exception to this assertion and posit that we can take judicial notice of the fact that when people recover full tort remedies for which they have paid no concomitant premium, the system incurs a cost for which it is not compensated. I see no need to provide record evidence of what is, in fact, a truism.

Sections 1705(a) and (b) provide numerous instances showing that the tort option chosen by the insured binds the members of the insured's household. In these other sections involving "election" of tort options, the legislature has indicated that the status of children, with respect to limited or full tort, follows that of their parent.[3] The children of insured parents who chose limited tort are circumscribed by the parental choice. Section 1705(a)A. The children of parents who select full tort are entitled to that coverage. Section

---

3. In referring to children in these examples, I address children who reside in the household of their parents, as in the matter *sub judice.*

1705(a)B. When parents do not return the paperwork manifesting their choice, but continue to pay premiums, they and those they are "empowered by this section to bind by [their] choice" are presumed to have chosen the full tort coverage. Section 1705(a)(3).

However, Section 1705(a)(5), which states that an owner of a registered car who does not maintain financial responsibility is "deemed to have chosen the limited tort alternative," does not repeat the language in preceding sections reflecting that the choice of the deemed insured binds the members of the household of the insured. In the absence of that specific language, the Majority correctly concludes that it would be necessary for the legislature to insert additional words into Section 1705(a) to demonstrate its intention that children be bound by the choices of their parents.

The legislature also prescribes the outcome for individuals who own registered cars and who have not purchased insurance, i.e., who do not maintain financial responsibility. These people are "deemed to have chosen the limited tort alternative." Section 1705(a)(5). They are "deemed to have chosen" limited tort because they did not exercise the option themselves. Section 1705(a)(5) is included in the same section as Section 1705(a)(1)A., which states that Pennsylvania law "give[s] you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation...." 75 Pa.C.S. § 1705(a)(1)A. If the mother of the Holland children had actively chosen limited tort, instead of driving without insurance, her children would have been the recipients of that choice, pursuant to Section 1705(a)(1)A. However, their mother did not choose, and the legislature left a hole with the "deemed to have chosen" language by not providing that, as in Section 1705(a)(1)A., the children, too, are "deemed to have chosen" the option of their mother.

Judge Bowes in the Concurring and Dissenting Opinion in the fractured Superior Court decision in the instant matter noted that the "deemed to have chosen" language "evinces an intent by the legislature to create the legal fiction of an

insurance policy where the uninsured owner of a vehicle stands in the shoes of a named insured." *Holland,* 817 A.2d at 1095 (Bowes, J., concurring and dissenting). While I find that interpretation eminently sensible, the fact is that the legislature is the entity that must correct the omission that leads to the result we determine today.

For this reason, I join the Majority Opinion in affirming the determination of the Superior Court.

Justice NIGRO joins this concurring opinion.

## DISSENTING OPINION

Justice EAKIN.

I respectfully disagree with the majority's determination that the language of the MVFRL clearly determined this question, which obviously is not addressed by the statute itself. I believe the majority's decision produces a result contrary to both the legislative intent of the MVFRL and the canons of statutory construction. While the meaning of the words in § 1705 might appear unambiguous when each subsection is plucked from the statute and read in isolation, statutes are not to be interpreted in such a manner. *See, e.g., Pennsylvania Dep't of Transportation v. Taylor,* 576 Pa. 622, 841 A.2d 108, 118 (2004) (Nigro, J., dissenting) ("in accomplishing our goal of ascertaining legislative intent, we do not interpret the words of a statute in isolation from each other, but rather, in the context in which they appear"); *O'Rourke v. Pennsylvania Dep't of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001) ("we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear"); *Consulting Engineers Council v. State Architects Licensure Bd.,* 522 Pa. 204, 560 A.2d 1375, 1377 (1989) (appellant's argument fails as it is premised upon excerpting one subsection from context in which it appears— effect of one subsection can only be understood in relation to provisions in rest of section); *Philadelphia Housing Authority v. Pennsylvania Labor Relations Bd.,* 508 Pa. 576, 499 A.2d 294, 299 (1985) ("A cardinal rule of statutory construction is

that we must give terms in a statute the meaning dictated by the context in which they are used"); *Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Bd.*, 481 Pa. 81, 392 A.2d 256, 258–59 (1978) (provisions of statutes should be construed with reference to similar matter and should not be read in vacuum).

Statutes are considered to be *in pari materia* when they relate to the same persons or things, and statutes or parts of statutes *in pari materia* shall be construed together, if possible. 1 Pa.C.S. § 1932. Courts are required, if possible, to give effect to each provision or subsection of the statute. *Id.*, § 1921(a). I believe the majority looks at the statute through an overly narrow lens, and by doing so it overlooks the ambiguity that arises when each provision of this statute is given effect. The words of § 1705 lack clarity when its parts are read *in pari materia*, and since the goal of judicial interpretation of this void in the statute is to ascertain and give effect to the legislative intent,[1] we are required to ascertain that intent and to interpret the statute in a manner consistent therewith.

In her concurring and dissenting opinion in this matter, Judge Bowes noted the circumstances under which the 1990 amendments to the MVFRL—which pronounced the full tort and limited tort options—were enacted. Judge Bowes cited spiraling auto insurance costs and the resultant increase in the number of uninsured motorists as the foremost reasons for the 1990 amendments to the MVFRL. *Holland v. Marcy*, 817 A.2d 1082, 1096 n. 7 (Pa.Super.2002) (Bowes, J., concurring and dissenting, joined by Johnson and Lally–Green, JJ.) (citing Ronca, J.R.; Sloane, L.A.; Lutz, D.L.; Shollenberger, T.A.; and Mundy, J.F.2001 at §§ 1.1, 1.2. *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law*, Second Edition (2001 Revision)). Judge Bowes noted the legislature enacted the 1990 amendments to the MVFRL to deal with the high costs of auto insurance and to make auto insurance affordable for uninsured motorists by establishing limited tort benefits, which could be purchased at

1. 1 Pa.C.S. § 1921(a).

lower premiums. *Id.,* at 1096 n. 7. Because the legislature's goal was to ensure there would be no excuse for driving without some form of insurance, the MVFRL should be construed to avoid rewarding motorists who intentionally neglect to purchase insurance. *Id.,* at 1096 (citing *McClung v. Breneman,* 700 A.2d 495 (Pa.Super.1997)). I believe the reasoning espoused by Judge Bowes in this matter is the proper course:

> Pursuant to the MVFRL, only a "named insured" under an insurance policy can choose a tort option. By indicating that an uninsured automobile owner is considered to "have chosen" the limited tort option, the legislature intended the uninsured vehicle owner to be treated like a named insured under an insurance policy. When read *in pari materia,* 75 Pa.C.S. § 1705(a)(5) and § 1705(d) support such an interpretation of the MVFRL....Clearly, this language evinces an intent by the legislature to create the legal fiction of an insurance policy where the uninsured owner of a vehicle stands in the shoes of a named insured.

*Id.,* at 1094–95 (footnote omitted).

An uninsured parent who is deemed to have chosen the limited tort alternative pursuant to § 1705(a)(5) must be treated the same as a "named insured" on a limited tort insurance policy. Therefore, pursuant to § 1705(b)(2), the limited tort option also applies to the minor children of the "named insured." I would reverse the determination of the Superior Court and remand for findings as to whether Joel Holland sustained permanent serious disfigurement permitting recovery under the limited tort option.

Justice CASTILLE joins this dissenting opinion.