**[J-23A-2018 and J-23B-2018] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| SNYDER BROTHERS, INC., | : | No. 47 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered March |
| | : | 29, 2017 at No. 1043 CD 2015, |
| v. | : | reversing the Order of the Public Utility |
| | : | Commission entered June 11, 2015 at |
| | : | No. C-2014-2402746. |
| PENNSYLVANIA PUBLIC UTILITY | : | |
| COMMISSION, | : | ARGUED:  April 11, 2018 |
| | : | |
| Appellant | : | |
| | | |
| PENNSYLVANIA INDEPENDENT OIL & | : | No. 48 WAP 2017 |
| GAS ASSOCIATION, | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court entered March |
| | : | 29, 2017 at No. 1175 CD 2015, |
| | : | reversing the Order of the Public Utility |
| v. | : | Commission entered June 11, 2015 at |
| | : | No. C-2014-2402746. |
| | : | |
| PENNSYLVANIA PUBLIC UTILITY | : | ARGUED:  April 11, 2018 |
| COMMISSION, | : | |
| | : | |
| Appellant | : | |

## DISSENTING OPINION

**JUSTICE MUNDY**                    **DECIDED: DECEMBER 28, 2018**

The Majority goes to great lengths to explain why the legislature's use of the word "any" in the definition of "stripper well" under Act 13 really means "each and every," contrary to the plain text the General Assembly employed in drafting the definition.  By deeming the stand-alone term "any" ambiguous, under the guise of gleaning legislative intent pursuant to the Statutory Construction Act, the Majority is able to assign to the

phrase "any calendar month" a meaning that the legislature plainly did not intend. Because I do not view the relevant statutory text to be ambiguous, resort to the factors enumerated in the Statutory Construction Act to discern legislative intent is not appropriate. Accordingly, I dissent.

Statutory construction analyses begin with the recognition of certain fundamental principles. Specifically, courts must first recognize that the plain language of the statute is the best indicator of legislative intent. *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC.*, 194 A.3d 1027 (Pa. 2018). Further, "[w]ords and phrases ordinarily should be understood according to their common and approved usage." *Id.* (citation omitted). Significantly, "when the words of a statute are clear and unambiguous, we must give effect to the plain language, and we cannot ignore the text of the statute in pursuit of its spirit." *Id.* (citing 1 Pa.C.S. § 1921). "It is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent." *A.S. v. Pa. State Police*, 143 A.3d 896, 903 (Pa. 2016). Thus, despite what may be an interpretation that advances the policy considerations that underlie enactment of a statute, courts are constrained to first adhere to the plain language of a statute and interpret the law in accordance therewith. It is not the role of the judiciary to divine the intentions of the General Assembly when the text of the statute is unambiguous, as I conclude the use of the word "any" is in the phrase "any calendar month." Indeed, the task of rectifying deficiencies in statutory language is one for the legislature. *Com., Office of Governor v. Donahue*, 98 A.3d 1223, 1240 (Pa. 2014).

"Ordinarily, a word's usage accords with its dictionary definition. In law, as in life however, the same words, placed in different contexts sometimes mean different things." *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016) (citation omitted); *see* Majority

Opinion at 28 (recognizing the term "'any' to be wholly dependent on the context in which it is used in the particular statute under review").

Act 13 defines the term "stripper well" as follows:

> An unconventional gas well incapable of producing more than 90,000 cubic feet of gas per day during any calendar month, including production from all zones and multilateral well bores at a single well, without regard to whether the production is separately metered.

58 Pa.C.S. § 2301. "Vertical gas well" is defined by reference to a stripper well, as follows:

> An unconventional gas well which utilizes hydraulic fracture treatment through a single vertical well bore and produces natural gas in quantities greater than that of a stripper well.

*Id.* Vertical gas wells are subject to impact fees; stripper wells are not.

The Commonwealth Court looked to the term "any" and ascribed to the word its most common usage:

> Viewing the plain language of the statutory provision in a common sense fashion, we agree with Petitioners that the word "any" in the definition of "stripper well" is unambiguous and it clearly and plainly means what it says -- "any month." Pursuant to subsections 2302(b) and (f) of Act 13, the impact fees are imposed for the "calendar year." Because a calendar year is a definite class consisting of twelve individual months, the most natural way to construe "any" is to interpret it to mean at least "one" month out of the year, no matter what or which month ("during any calendar month"). This reading is bolstered by the fact that "any" is located within a prepositional phrase and modifies the singular noun, "calendar month," which signifies that only one or a singular month is contemplated in the grammatical schemes. *See* William A. Sabin, *The Gregg Reference Manual* 238, 259 (9th ed. 2001) (stating the term "any" is a singular when it modifies a singular noun). Notably, section 2301 of Act 13 does not say "in any calendar month**[s]**," which would tend to suggest that the General Assembly intended "any" to be the equivalent of "every" or "all" months.

*Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 157 A.3d 1018, 1023-24 (Pa. Cmwlth. 2017) (en banc).

The Majority asserts that the word "any" has alternative meanings dependent on the context. Majority Opinion at 27. It continues that the word could mean "'all' or 'every,' as well as 'one,'" and concludes, because there are two reasonable interpretations of the term, it is ambiguous. *Id.* at 27-29. The word "any," standing alone, may indeed be ambiguous, but it does not stand alone in the definition of "stripper well", and the Majority's conclusion fails to account for its use in the context of the phrase "any calendar month." Viewing the phrase in the appropriate context, "any calendar month," as the Commonwealth Court correctly observed, plainly means any of the twelve months in the relevant reporting period, not all months or each and every month. Thus, if an unconventional gas well is incapable of producing 90,000 cubic feet of gas per day in any calendar month, *i.e.*, one single month, it is a stripper well and not subject to the imposition of the fee. Had the legislature intended the construction the Majority adopts, it easily could have drafted the provision differently using the words the Majority engrafts onto the definition: "An unconventional gas well incapable of producing more than 90,000 cubic feet of gas per day during each and every calendar month… ."

The Majority's treatment of the language in the definition of "stripper well" also fails to give effect to the use of the word "incapable." The Majority recognizes that stripper well is defined in terms of its *capability* to produce 90,000 cubic feet of gas per day in any month, rather than the actual production of the well but concludes the distinction is not relevant. *See* Majority Opinion at 27 n. 18. I disagree. The General Assembly chose to define stripper well as one "incapable of producing" the threshold amount of gas per day.[1]

---

[1] I note at the hearing before the ALJ, a representative from SBI testified that the operational efforts were to produce the wells to their maximum capability. Thus, if a well's

It did not ground the definition in terms of what the well actually produced. *See* 58 Pa.C.S. § 2301. The Majority's construction assumes that if a well produces 90,000 cubic feet of gas in one month, it is *capable* of producing the same amount each and every month. This assumption reads the "incapable" requirement out of the definition and is contrary to the principles of statutory construction. *See Giulian*, 141 A.3d at 1268.

Courts construing statutes must adhere to the statute as written, and likewise be mindful of what is not written. *See id.* The legislature did not draft the definition of stripper well to equate to a well "that does not produce" the threshold amount in "each and every month" despite the Majority's interpretation to the contrary. Rather, it defined stripper well as one "*incapable of producing* more than 90,000 cubic feet of gas per day during *any calendar month.*" 58 Pa.C.S § 2301 (emphasis added). This Court may not amend the statute but instead must examine the statute as drafted by the legislature." *Holland v. Marcy*, 883 A.2d 449, 456-57 (Pa. 2005). Moreover, "we have stressed courts should not add, by interpretation, a requirement not included by the General Assembly." *Guilian,* 141 A.3d at 1268 (citation omitted). The holding today contravenes the plain text the General Assembly chose to define a "stripper well" in an effort to broaden the imposition of impact fees under what the Majority believes is the intent of Act 13. [2]

---

production fell below 90,000 cubic feet of gas, the well was indeed incapable of producing that amount. *See* N.T., 12/4/14. at 82.

[2] Although I do not find this an appropriate circumstance in which to look beyond the plain text of the statute to ascertain legislative intent, I note that Senator Joseph P. Scarnati, President Pro Tempore of the Pennsylvania Senate and Senator E. Eugene Yaw, Chair of the Senate Environmental Resources and Energy Committee have filed an *amicus* brief in which they posit the legislative history supports the Commonwealth Court's interpretation of "stripper well." *Amici* note that earlier versions of the bill defined "marginally producing wells as 'nonproducing wells,'" that measured production on a yearly basis. *See* Brief of *Amicus Curiae* Senators Scarnati and Yaw at 5-6. However, in the final version, the General Assembly "replaced 'nonproducing well' with 'stripper well' and changed the way production is measured from a yearly basis to a monthly basis." *Id.* at 6. This change, in *amici's* view, evidences the intent of the legislature to examine

Because I conclude the Commonwealth Court correctly held that the term "any" as used in the phrase "any calendar month" in the definition of stripper well plainly and unambiguously means "one," I dissent. [3]

---

the threshold production on a monthly, rather than yearly basis. *See id.* Thus, *amici* suggest the legislative history supports an interpretation of "stripper well as one that is incapable of exceeding the threshold production level in any single month." *Id.* I do not find it necessary to address the legislative history in light of the plain language of the definition; however, I find the points made by *amici*, as participants in the legislative process resulting in the enactment of Act 13, persuasive.

[3] I acknowledge the Commonwealth Court opinion contained a number of erroneous interpretations of Act 13, as recognized by the Majority Opinion. *See* Majority Opinion at 14 n. 12; 15 n. 13, n. 14. However, any such errors were in *dicta* and not dispositive of the plain language analysis.