J-A27045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.M.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.J.D. AND J.E.D. | :: | No. 974 WDA 2017 |

Appeal from the Order June 7, 2017
in the Court of Common Pleas of Somerset County,
Orphans' Court at No(s): No. 2 Adoption 2017

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 13, 2018**

R.J.D. ("Mother") and J.D. ("Stepfather") (collectively, "Appellants" or "Petitioners") appeal from the Order denying their Petition to terminate the parental rights of M.E.L. ("Father") to K.M.L. ("Child") (born in December 2007), Father's female child with Mother. Petitioners filed the termination Petition so that Stepfather may adopt Child. We affirm.

In its Opinion, the trial court set forth the following procedural history and factual background as follows:

> Mother and [Father] . . . start[ed] dating while they were in high school, and the two moved in together immediately after they graduated. At the time, the two also lived with Mother's [female] child from a previous relationship, [H.E.] (hereinafter referred to as "H."), who was approximately four years old at the time. In 2000, Mother and Father had their first child together, a son, named [J.L.] (hereinafter referred to as "J."). While Mother was pregnant with [J.], Father was arrested for allegedly assaulting Mother's [a]unt. This arrest resulted in a conviction of Indecent Assault – Complainant is Unconscious or Unaware of Contact[FN1] on November 2, 2001. Father served time in the Somerset County Jail for this offense.

Mother and Father were married in 2006, and Child was born [in December of 2007]. Child was about five or six months old when Mother and Father separated. Mother moved out of the home and filed a Petition for Protection from Abuse (hereinafter referred to as "PFA") against Father. Between the time Mother moved out from the residence and filed for the PFA, [J.] and Child were in the sole custody of Father in the home. The PFA was entered on October 30, 2008, and Mother was granted custody of [J.] and Child during the PFA process. On December 8, 2008, the parties came to an agreement regarding custody of [J.] and Child, in which Mother and Father shared legal and physical custody.

Father was arrested in July of 2009 on allegations that he sexually assaulted [H.] A trial was held, and Father was convicted of one count of Indecent Assault[FN2] on January 28, 2011. Father served time for this conviction in the Somerset County Jail. This conviction required that Father register on the Pennsylvania Sexual Offender Registry. From the time of his arrest to the conclusion of his sentence, Father was not permitted to have contact with either [J.] or Child, or any child under the age of eighteen (18)[,] by way of a condition in Father's criminal sentencing [O]rder.

[R.L.], Father's father (hereinafter referred to as "Paternal Grandfather"), and [K.L.], Father's mother (hereinafter referred to as "Paternal Grandmother")[] (collectively hereinafter referred to as "Paternal Grandparents")[,] filed a Petition for Intervention in Custody Case on October 30, 2009.[FN3] The parties came to an agreement, and Paternal Grandparents were granted unsupervised visitation with [J.] and Child on December 8, 2009. The visits were scheduled to occur every other Saturday[,] from 9:00 a.m. until 5:00 p.m.

On January 30, 2012, the [c]ourt entered a No Contact Order (hereinafter referred to as [the] "2012 No Contact Order") between Father and [J.] and Child. Father was prohibited from having any contact whatsoever with [J.] and Child until further order of the [c]ourt. Father filed a Petition for Modification of the Current Custody Order on July 9, 2013, requesting shared legal and physical custody of both [J.] and Child. A custody trial was scheduled for November 14, 2013. However, on the day of trial, in accordance with 23 Pa.C.S.A. § 5329(c), the [c]ourt ordered that Father must first submit himself to an Initial Evaluation to determine whether he poses a threat to [J.] and Child and whether

counseling is necessary. The custody trial was continued multiple times due to lack of the submission of the Initial Evaluation in February of 2014, April of 2014, and September of 2014.

On May 13, 2014, [J.] was no longer able to reside with Mother, and [J.] went to live with Paternal Grandparents. Father also resided with Paternal Grandparents at that time, and continues to reside in that home. Because of the 2012 No Contact Order that was in effect, [Somerset County] Children & Youth Services (hereinafter referred to as "CYS") was notified that [J.] would be living in the same home as Father. It is believed that CYS had no objection to this arrangement. [J.] has been living with his Paternal Grandparents and Father since that time, and Father has had *de facto* primary physical custody of [J.]. [J.] does not currently have contact with Mother. Father filed a Petition for Modification of Custody on January 13, 2017. Father requested in that [P]etition that the 2012 No Contact Order be lifted[,] and that he be granted primary legal and physical custody of [J.]. Additionally, Father requested that he be granted shared legal and physical custody of Child.

On January 30, 2017, Mother filed an Emergency Petition to Suspend Partial Custody, Modify Custody, and Contempt of Custody Order of January 30, 2012. In that [P]etition, Mother alleges that Paternal Grandparents allowed several instances of contact or threatened contact between Father and Child. The [c]ourt found Paternal Grandparents in Contempt of the January 30, 2012 Order in an Order dated March 14, 2017. As sanctions for this contempt, the Paternal Grandparents' visitations with Child were reduced from 9:00 a.m. until 5:00 p.m. to 9:00 a.m. until 1:00 p.m., and Paternal Grandparents were ordered to pay a three[-] hundred[-] dollar ($300) fine. This March 14, 2017 Order reiterated that Paternal Grandparents should ensure that "there is no contact either directly or indirectly between [Child] and [Father]." Additionally, the March 14, 2017 Order stated that "[t]he prohibition of contact includes presenting photos, written or electronic messages or gifts represented as from [Father]."

Also on January 30, 2017, Petitioners filed the instant Petition. The basis for the Petition is 23 Pa.C.S.A. § 2511(a)(1): that Father has "evidenced a settled purpose to relinquish his parental rights" to Child. Petitioners further requested that Father's parental rights be terminated so that [Stepfather] is able to adopt Child. Petitioners filed an Amended Petition for

- 3 -

Involuntary Termination of Parental Rights (hereinafter referred to as "Amended Petition") on May 2, 2017. In the Amended Petition, the Petitioners allege [that] the basis for termination of parental rights is set forth in 23 Pa.C.S.A. § 2511(a)(11)[,] in addition to 23 Pa.C.S.A. § 2511(a)(1)[,] that Father "is required to register as a sexual offender." Petitioners again requested that Father's parental rights be terminated so that [Stepfather] is able to adopt Child.

The [c]ourt appointed [Attorney Robbins as GAL, and Attorney Huston as legal counsel for Child.] GAL filed a Report … on May 9, 2017, in which it was argued that [Child's] best interests would *not* be served by terminating Father's parental rights[,] because instead of a settled purpose to relinquish his rights, Father has "taken measures to begin reestablishing a relationship with [Child]."

A hearing on the Amended Petition was held on May 9, 2017[, and on May 16, 2017]….

---

[1] 18 Pa.C.S.A. § 3126([a])(4).

[2] 18 Pa.C.S.A. § 3126([a])(8).

[3] Docketed at Somerset County 858 CIVIL 2008, 913 CIVIL 2008. All references to the underlying custody case are at this docket number.

Trial Court Opinion, 6/7/17, at 1-5 (footnotes in original, emphasis added).[1]

On June 7, 2017, the trial court entered the Order at issue, which denied the Petition to terminate the parental rights of Father to Child. Appellants timely filed an appeal from that Order, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In their brief on appeal, Appellants raise the following issues:

1. Whether the trial court erred in denying the Petition to terminate parental rights based upon 23 Pa.C.S.A. § 2511(a)(11)[,] where [F]ather is required to register as a sexual offender[?]

2. Whether the trial court erred in finding [F]ather's completion of his sentence, [F]ather's compliance with registration and probationary requirements[,] and the fact that [C]hild was not the victim of the crime for which [F]ather is required to register as a sexual offender[,] as reasons to not terminate [F]ather's parental rights based upon 23 Pa.C.S.A. § 2511(a)(11)[?]

---

[1] On February 10, 2017, the trial court appointed Christopher R. Robbins, Esquire ("Attorney Robbins"), as the guardian *ad litem* ("GAL") for Child, and, on May 5, 2017, the trial court appointed Sara E. Huston, Esquire ("Attorney Huston"), as the *legal counsel* for Child. **See In re: Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) (initially filed on March 28, 2017) (holding that a trial court is required by statute to appoint counsel to represent a child's legal interests in a contested involuntary termination proceeding). At the hearing on the termination Petition, both Attorney Robbins and Attorney Huston actively questioned the witnesses. The GAL, Attorney Robbins, recommends that, in the best interest of Child, the court should not terminate Father's parental rights. GAL Letter, 9/1/17. Child's legal counsel, Attorney Huston, disagrees, arguing that the trial court improperly denied the Petition to terminate Father's parental rights to Child, in that it erred in its consideration of section 2511(a)(1) and (11), and it erred in failing to proceed to a best interest analysis under section 2511(b). Brief of Legal Counsel of Child at 3. Thus, we acknowledge that Child's attorneys are in conflict. This conflict, however, does not alter our scope and standard of review, and our ultimate conclusion, as discussed, *infra*.

3. Whether the trial court erred in finding [that] Appellants failed to establish[,] by clear and convincing evidence[,] that [F]ather's parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(11)[?]

4. Whether the trial court erred in finding that it[] "would not be in [Child's] best interest to terminate [F]ather's parental rights simply because he is required to register as a sexual offender[,]" when the [c]ourt did not perform a best[-]interest analysis or an analysis to determine if there is a parent-child bond or relationship[?]

5. Whether the trial court erred by not performing an analysis under 23 Pa.C.S.A. § 2511(b)[,] since Appellants established [that] [F]ather is required to register as a sexual offender under 42 Pa.C.S.[A.] Ch. 97 Subch. H[?]

6. Whether the trial court erred in failing to find that [] [F]ather failed or refused to perform parental duties for a period in excess of six months pursuant to 23 Pa.C.S.A. § 2511(a)(1)[?]

7. Whether the trial court erred in finding [F]ather did not demonstrate a settled purpose of relinquishing parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1)[?]

8. Whether the trial court erred in considering [F]ather's payment of [c]ourt[-][o]rdered and garnished child support as a factor that illustrates [F]ather has not demonstrated a settled purpose to relinquish parental rights to Child[?]

9. Whether the trial court erred in finding [that] [F]ather was prevented from seeing [C]hild by a No Contact Order when the No Contact Order forbid [*sic*] [F]ather from having contact with both of his children and [F]ather did not abide by the [O]rder and had regular contact with [C]hild's sibling[, J.?]

10. Whether the trial court erred in finding [F]ather's filing of a Petition for Modification of Custody in 2013 and 2017, with no other action taken, as concrete steps to overcome the obstacle of a No Contact Order sufficient to defeat a 23 Pa.C.S.A. § 2511(a)(1) Petition[?]

Brief of Appellants at 4-7. For ease of disposition, we combine Appellants'

arguments, and address (a) whether the trial court properly found that

Appellants failed to meet their burden in establishing grounds for termination

pursuant to section 2511(a)(1) and (11); (b) whether the trial court erred in

not finding that Appellants met their burden of proving grounds for

termination pursuant to section 2511(a)(11), based solely on Father's status

as a reporting sex offender; and (c) whether the trial court erred in not

conducting a separate best-interest analysis pursuant to subsection (b).

In reviewing an appeal from an order determining a Petition for the

termination of parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion
> standard when considering a trial court's determination of a
> petition for termination of parental rights. As in dependency
> cases, our standard of review requires an appellate court to accept
> the findings of fact and credibility determinations of the trial court
> if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9,
> [19], 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are
> supported, appellate courts review to determine if the trial court
> made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614
> Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)].
> As has been often stated, an abuse of discretion does not result
> merely because the reviewing court might have reached a
> different conclusion. *Id.*; *see also Samuel Bassett v. Kia
> Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa.
> 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d
> 630, 634 (Pa. 2003). Instead, a decision may be reversed for an
> abuse of discretion only upon demonstration of manifest
> unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for
> applying an abuse of discretion standard of review in these cases.
> We observed that, unlike trial courts, appellate courts are not
> equipped to make the fact-specific determinations on a cold
> record, where the trial judges are observing the parties during the

relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove, by clear and convincing evidence, that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation omitted).

Here, Appellants challenge the trial court's rejection of their argument that Father's parental rights should be terminated under section 2511(a)(1) and/or (11), as well as section 2511(b). Section 2511 provides, in relevant part, as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the

filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

(11)     The parent is required to register as a sexual offender under 42 Pa.C.S.[A.] Ch. 97 Subch. H (relating to registration of sexual offenders) or to register with a sexual offender registry.

\* \* \*

**(b)     Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Further, regarding subsection (a)(1),

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

Regarding the definition of "parental duties," this Court has stated as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty[,] which requires affirmative performance.

\* \* \*

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* at 855 (citations omitted).

We are also cognizant that a parent's incarceration "neither compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d at 828.

Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Id.* at 828 (citation omitted).

Appellants argue that they presented three bases upon which the court should have terminated Father's parental rights to Child: (1) Father's settled

- 10 -

purpose to relinquish his parental claim in excess of six months preceding the filing of the Petition, *see* 23 Pa.C.S.A. § 2511(a)(1); (2) Father's failure to perform parental duties in excess of six months preceding the filing of the Petition, *see* 23 Pa.C.S.A. § 2511(a)(1); and (3) the fact that Father is required to register as a sexual offender pursuant to 42 Pa.C.S.A. Ch.97 Subch. H, *see* 23 Pa.C.S.A. § 2511(a)(11). Brief of Appellants at 13.

Appellants contend that the trial court abused its discretion by affording significant weight to Father's filing of a Petition to modify custody on January 13, 2017, and his payment of court-ordered child support. *Id.* at 14. Appellants assert that Father's Petition for modification immediately preceded their filing of their Petition for termination, and that Father acknowledged his suspicion that Appellants would be filing the termination Petition. *Id.* According to Appellants, Father's filing of the modification Petition is not sufficient to demonstrate his desire to parent Child, and to counter a conclusion that Father has a settled purpose to relinquish his parental rights. *Id.*

Appellants point out that, on November 13, 2014, the trial court ordered Father to provide his evaluation, pursuant to 23 Pa.C.S.A. § 5329(c), before the court could make a determination regarding custody, and Father has never provided such evaluation to the court. Brief for Appellants at 14. Because Father failed to provide evidence that he poses no risk of harm to Child, Appellants assert, there is no reasonable expectation that Father will remedy

the circumstances that currently prevent him from having custody of Child. *Id.* Appellants argue that Father's filing of one custody Petition in three years does not satisfy Father's parental duties toward Child, and does not defeat their claim that Father has demonstrated a settled purpose to relinquish his parental claim to Child. *Id.* at 15.

Child's legal counsel, Attorney Huston, joins in the argument Appellants make in their brief. Brief of Legal Counsel for Child at 3. She asserts that, after the trial court had entered the Custody Order in 2013, Father sat idly by for nearly four years. *Id.* at 8. She contends that Father's attempt to modify the Custody Order in early 2017 does not remedy his complete failure to parent Child for multiple years. *Id.* Further, she argues, Father's payment of child support for Child was not a sufficient reason to deny the termination Petition. *Id.* She alleges that the 2012 No Contact Order did not present an obstacle to Father's parenting of Child, and that Father's filing of the custody modification Petition in 2017 did not show the necessary reasonable firmness in avoiding an obstacle to his parenting. *Id.* at 8-9. Thus, Child's legal counsel argues, section 2511(a)(1) was satisfied in this matter. *Id.* at 5-11.

In its Opinion, the trial court addressed Appellants' arguments regarding the trial court's consideration and application of 23 Pa.C.S.A. § 2511(a)(1) and (11). *See* Trial Court Opinion, 6/7/17, at 6-17. After a careful review of the record, this Court finds the trial court's determination that Father has not evinced a settled purpose to relinquish his parental duties or failed to perform

parental duties with regard to Child, where he has continued to pay child support for Child in the face of the non-contact order, and where he has attempted to obtain custody of Child, is supported by competent, clear and convincing evidence in the record. ***In re Adoption of S.P.***, 47 A.3d at 826-27. We must defer to the trial court judge as long as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***Id.*** Accordingly, we discern no error of law or abuse of discretion with regard to the trial court's determination as to section 2511(a)(1). We therefore affirm on the basis of the trial court's Opinion with regard to this claim. ***See*** Trial Court Opinion, 6/7/17, at 6-17.

Next, we address Appellants' challenge to the trial court's interpretation of section 2511(a)(11). Brief for Appellants at 16. Appellants contend that it is uncontested that Father is required to register as a sex offender. ***Id.*** Appellants contend that the trial court misconstrued section 2511(a)(11) by improperly emphasizing the word, "may," as used in that subsection. Brief for Appellants at 17.

Child's legal counsel, Attorney Huston, agrees with Appellants that, as Father is a sexual offender who is required to register, Appellant established grounds for termination pursuant to section 2511(a)(11). Brief of Child's Legal Counsel at 3-5. She states that, as such, the termination of Father's parental rights was mandatory. ***Id.***

In its Opinion, the trial court addressed this claim, and concluded that it lacks merit. *See* Trial Court Opinion, 6/7/17, at 17-19. We agree and affirm on the basis of the trial court's Opinion with regard to Appellants' arguments, with the following addendum. *See id.*

We acknowledge that Father undisputedly is required to register as a sexual offender. Section 2511(a)(11) provides, in relevant part, as follows:

> The rights of a parent in regard to a child **may be terminated** after a petition filed on any of the following grounds:
>
> * * *
>
> (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Sub. H.

23 Pa.C.S.A. § 2511(a)(11) (emphasis added).

Our Court has stated that

> "the interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 570 (Pa. Super. 2005). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." **In re Wilson**, 879 A.2d 199, 214 (Pa. Super. 2005) (*en banc*).

**In re Adoption of J.A.S.**, 939 A.2d 403, 405 (Pa. Super. 2007).

The object of statutory interpretation is to ascertain and effectuate the intent of the legislature. **B.K.M. v. J.A.M.**, 50 A.3d 168, 174 (Pa. Super. 2012). In interpreting statutory language, initially we look to the plain language of the statute, and determine whether any ambiguity exists. **Id.** "Only when the words are ambiguous may we look to the general purposes of

the statute, legislative history, and other sources in an attempt to determine the legislative intent." *Holland v. Marcy*, 883 A.2d 449, 455 (Pa. 2005). Further, "[w]e must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage." *Cimino v. Valley Family Med.*, 912 A.2d 851, 853 (Pa. Super. 2006) (citation omitted).

Our review of the plain language of section 2511(a)(11) discloses that a parent's rights "may" be terminated under that section, but it is not mandatory. *See* 23 Pa.C.S.A. § 2511(a)(11). We cannot ignore the plain language of the statute. *See Holland*, 883 A.2d at 455. Accordingly, the trial court properly concluded that section 2511(a)(11) does not mandate that Father's parental rights be terminated based solely on his status as a registered sex offender.

Finally, Appellants argue that the trial court improperly failed to conduct a best-interests analysis pursuant to 23 Pa.C.S.A. § 2511(b). Brief for Appellants at 17-18, 22. Appellants assert that, upon finding section 2511(a) satisfied, the court was required to conduct an analysis of Child's best interests under section 2511(b). Brief for Appellants at 17-18, 22. According to Appellants, because the trial court improperly failed to find section 2511(a) satisfied, the trial court, in turn, erred in failing to consider Child's physical

and emotional needs and welfare in relation to section 2511(b). Brief for Appellants at 13-14.

Child's legal counsel likewise argues that because Father is a registered sex offender, thereby meeting Appellants' burden under subsection 2511(a)(11), the trial court should have proceeded to consider section 2511(b), and it erred in failing to do so. Brief of Child's Legal Counsel at 11.

As set forth above, we discern no error or abuse of discretion in the trial court's determination that Appellants have failed to establish grounds for termination pursuant section 2511(a). Subsection (b) provides that if the grounds for termination under subsection (a) are met, a court "**shall** give primary consideration to the developmental, physical and emotional needs and welfare of the child." *In re: T.S.M.*, 71 A.3d at 267 (quoting 23 Pa.C.S.A. § 2511(b) (emphasis added)). Subsection (b) does not require this separate best-interests analysis where grounds for termination under subsection (a) are not met. Because Appellants failed to establish grounds for termination under subsection (a), consideration of Child's best interests under subsection (b) was not mandated. *See* 23 Pa.C.S.A. § 2511(b). Accordingly, we affirm the Order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/13/2018

<table>
<tr><td></td><td>)</td><td>IN THE COURT OF COMMON PLEAS OF<br>SOMERSET COUNTY, PENNSYLVANIA</td></tr>
<tr><td>IN RE:</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>K␣␣␣␣ M␣␣␣ L␣␣␣</td><td>)</td><td>NO. 2 ADOPTION 2017</td></tr>
<tr><td>DOB: 12/1␣/2007</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>PETITION FOR INVOLUNTARY</td></tr>
<tr><td></td><td>)</td><td>TERMINATION OF PARENTAL RIGHTS</td></tr>
</table>

For Petitioners:    DeAnn M. McCoy, Esq.

For Respondent:    David T. Leake, Esq.

Argument:    May 9, 2017, May 16, 2017



**MEMORANDUM**

This matter comes before us on R␣␣␣␣␣␣␣␣␣ ␣␣␣␣␣ hereinafter referred to as "Mother")

and J␣ ␣␣ ␣␣ D␣␣␣␣ ; (hereinafter referred to as "Step-Father")(collectively hereinafter

referred to as "Petitioners") Petition for Involuntary Termination of Parental Rights (hereinafter

referred to as "Petition"). Step-Father wishes to adopt K␣␣␣␣␣ M␣␣␣ L␣␣␣␣ (hereinafter

referred to as "Child") if the Court were to grant the Petition. For the following reasons, the

Petition is denied.

**Factual and Procedural History**

Mother and M␣␣␣ ␣ E␣␣ ␣␣␣ L␣␣␣␣␣ (hereinafter referred to as "Father") starting dating

while they were in high school, and the two moved in together immediately after they graduated.

At the time, the two also lived with Mother's child from a previous relationship, H␣␣␣ ␣ E␣␣␣␣ ␣␣␣

(hereinafter referred to as "H␣␣␣␣"), who was approximately four years old at the time. In 2000,

Mother and Father had their first child together, a son, named J␣␣ ␣ L␣␣␣␣ ␣ (hereinafter referred

to as "J␣␣␣␣"). While Mother was pregnant with J␣␣␣␣, Father was arrested for allegedly

assaulting Mother's Aunt. This arrest resulted in a conviction of Indecent Assault – Complainant

135

is Unconscious or Unaware of Contact[1] on November 2, 2001. Father served time in the Somerset County Jail for this offense.

Mother and Father were married in 2006, and Child was born on December 7, 2007. Child was about five or six months old when Mother and Father separated. Mother moved out of the home and filed a Petition for Protection from Abuse (hereinafter referred to as "PFA") against Father. Between the time Mother moved out from the residence and filed for the PFA, J       and Child were in the sole custody of Father in the home. The PFA was entered on October 30, 2008, and Mother was granted custody of J      and Child during the PFA process. On December 8, 2008, the parties came to an agreement regarding custody of J     and Child, in which Mother and Father shared legal and physical custody.

Father was arrested in July of 2009 on allegations that he sexually assaulted H    . A trial was held, and Father was convicted of one count of Indecent Assault[2] on January 28, 2011. Father served time for this conviction in the Somerset County Jail. This conviction required that Father register on the Pennsylvania Sexual Offender Registry. From the time of his arrest to the conclusion of his sentence, Father was not permitted to have contact with either J     or Child, or any child under the age of eighteen (18) by way of a condition in Father's criminal sentencing order.

R   L     , Father's father (hereinafter referred to as "Paternal Grandfather"), and K     L      , Father's mother (hereinafter referred to as "Paternal Grandmother"), (collectively hereinafter referred to as "Paternal Grandparents") filed a Petition for Intervention in Custody Case on October 30, 2009.[3] The parties came to an agreement, and Paternal

---

[1] 18 Pa. C.S.A. § 3126(A)(4).
[2] 18 Pa. C.S.A. § 3126(A)(8).
[3] Docketed at Somerset County 858 CIVIL 2001, 913 CIVIL 2008. All references to the underlying custody case are at this docket number.

2

Grandparents were granted unsupervised visitation with J___ and Child on December 8, 2009. The visits were scheduled to occur every other Saturday from 9:00 a.m. until 5:00 p.m.

On January 30, 2012, the Court entered a No Contact Order (hereinafter referred to as "2012 No Contact Order") between Father and J___ and Child. Father was prohibited from having any contact whatsoever with Jacob and Child until further order of the Court. Father filed a Petition for Modification of the Current Custody Order on July 9, 2013, requesting shared legal and physical custody of both J___ and Child. A custody trial was scheduled for November 14, 2013. However, on the day of trial, in accordance with 23 Pa. C.S.A. § 5329(c), the Court ordered that Father must first submit himself to an Initial Evaluation to determine whether he poses a threat to J___ and Child and whether counseling is necessary. The custody trial was continued multiple times due to lack of the submission of the Initial Evaluation in February of 2014, April of 2014, and September of 2014.

On May 13, 2014, J___ was no longer able to reside with Mother, and J___ went to live with Paternal Grandparents. Father also resided with Paternal Grandparents at that time, and continues to reside in that home. Because of the 2012 No Contact Order that was in effect, Children & Youth Services (hereinafter referred to as "CYS") was notified that Jacob would be living in the same home as Father. It is believed that CYS had no objection to this arrangement. J___ has been living with his Paternal Grandparents and Father since that time, and Father has had de facto primary physical custody of J___. J___ does not currently have contact with Mother.

Father filed a Petition for Modification of Custody on January 13, 2017. Father requested in that petition that the 2012 No Contact Order be lifted and that he be granted primary legal and physical custody of J___. Additionally, Father requested that he be granted shared legal and

3

physical custody of Child.

On January 30, 2017, Mother filed an Emergency Petition to Suspend Partial Custody, Modify Custody, and Contempt of Custody Order of January 30, 2012. In that petition, Mother alleges that Paternal Grandparents allowed several instances of contact or threatened contact between Father and Child. The Court found Paternal Grandparents in Contempt of the January 30, 2012 Order in an Order dated March 14, 2017. As sanctions for this contempt, the Paternal Grandparents' visitations with Child were reduced from 9:00 a.m. until 5:00 p.m. to 9:00 a.m. until 1:00 p.m., and Paternal Grandparents were ordered to pay a three hundred dollar ($300) fine. This March 14, 2017 Order reiterated that Paternal Grandparents should ensure that "there is no contact either directly or indirectly between [Child] and [Father]." Additionally, the March 14, 2017 Order stated that "[t]he prohibition of contact includes presenting photos, written or electronic messages or gifts represented as from [Father]."

Also on January 30, 2017, Petitioners filed the instant Petition. The basis for the Petition is 23 Pa. C.S.A. § 2511(a)(1): that Father has "evidenced a settled purpose to relinquish his parental rights" to Child. Petitioners further requested that Father's parental rights be terminated so that Step-Father is able to adopt Child. Petitioners filed an Amended Petition for Involuntary Termination of Parental Rights (hereinafter referred to as "Amended Petition") on May 2, 2017. In the Amended Petition, the Petitioners allege the basis for termination of parental rights is set forth in 23 Pa. C.S.A. § 2511(a)(11) in addition to 23 Pa. C.S.A. § 2511(a)(1): that Father "is required to register as a sexual offender." Petitioners again requested that Father's parental rights be terminated so that Step-Father is able to adopt Child.

The Court appointed Christopher R. Robbins, Esquire as Guardian ad Litem for Child (hereinafter referred to as "GAL") on February 10, 2017. Additionally, the Court appointed Sara

4

138

Huston, Esquire as legal counsel for Child on May 5, 2017. GAL filed a Report of Guardian ad Litem on May 9, 2017, in which it was argued that the Child's best interests would not be served by terminating Father's parental rights because instead of a settled purpose to relinquish his rights, Father has "taken measures to begin reestablishing a relationship with [Child]."

A hearing on the Amended Petition was held on May 9, 2017. Due to the length of testimony, the hearing was unable to be completed on that day. An additional day of testimony was conducted on May 16, 2017. The Child was called as a witness by Mother and was questioned by both parties, GAL, and legal counsel for the Child. The matter was taken under advisement on May 16, 2017.

### Standard of Review

In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking the termination to prove by "clear and convincing evidence" the grounds for doing so. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994). "The standard of 'clear and convincing' evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of Dale A., II*, 683 A.2d 297, 299 (Pa. Super. Ct. 1996).

23 Pa. C.S.A. § 2511(a) lists on what grounds the rights of a parent in regard to a child may be terminated after a petition is filed. The Amended Petition in the instant case was based on:

> 23 Pa. C.S.A. § 2511(a)(1): The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> 23 Pa. C.S.A. § 2511(a)(11): The parent is required to register as a sexual offender under 42 Pa. C.S. Ch. 97 Subch. H (relating to

5

registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

Further, "[w]ith respect to any petition filed pursuant to subsection (a)(1) . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa. C.S.A. § 2511(b).

Essentially, the test for terminating parental rights consists of two parts:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. Ct. 2007)(internal citations omitted).

### Discussion

The Amended Petition is based on two Subsections of § 2511(a): (1) and (11). Each Subsection will be analyzed in turn.

#### *23 Pa. C.S.A. § 2511(a)(1): Settled Purpose of Relinquishment*

The Petitioners argue that Father has "failed to maintain any meaningful contact with the subject child for a period in excess of six (6) months," and thereby has evidenced a settled purpose to relinquish his parental rights. Am. Pet. ¶ 17. Petitioners claim that Father has "failed to maintain contact with the child, failed to provide support for the child, failed to provide permanency for the child, and . . . has no reasonable likelihood of regaining custody of child." *Id.* at ¶ 6. Additionally, Petitioners contend that Father has made no reasonable effort to

6

"maintain a relationship with [Child] through written correspondence, greeting cards, or holiday gifts." *Id.* at ¶ 18.

Father denies that he has demonstrated a settled purpose of relinquishing his parental rights to Child. Father's response to Petitioners' arguments is that: (1) Father denies that he has failed to maintain meaningful contact with Child as he has made reasonable efforts to see Child while under the 2012 No Contact Order through numerous legal proceedings including an active Petition for Modification of Custody that is to be scheduled for trial in June of 2017, (2) Father denies he has failed to provide support for Child as he has paid child support for Child since Father and Mother separated, and (3) Father denies that he has no reasonable likelihood of regaining custody of Child. Answer to Pet. ¶¶ 5, 6, 16, 17. Each of Father's responses will be analyzed in turn.

Father contends that his lack of contact with Child has been a result of the no contact order from his criminal sentence and then the 2012 No Contact Order, but that he has continuously been seeking custody through multiple legal proceedings. *Id.* at ¶¶ 16, 17. Father testified that he immediately filed for custody of both J      and Child "as soon as [he] finished everything that [he] had to do" with his sentence and parole. Hr'g Tr. vol. 1, 170:8-11. Most recently, Father filed a Petition for Modification of Custody on January 13, 2017, which was filed seventeen (17) days prior to the Petition.

In order to terminate the rights of a parent, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition. . . has evidenced a settled purpose of relinquishing parental claim to a child." 23 Pa. C.S.A. § 2511(a)(1). Father argues that in the six months immediately preceding the filing of the petition in this case, he has demonstrated a settled purpose to regain custody of Child. Answer to Pet. ¶ 18. This Court finds

7

41

Father's argument persuasive. In the six months immediately preceding the filing of the Petition, Father filed a Petition for Modification of Custody on January 13, 2017. In that Petition, Father requested primary legal and physical custody of J(   ), as well as shared legal and physical custody of Child. Pet. for Mod. of Custody ¶¶ 17, 18. Father testified that the sole purpose of him retaining David T. Leake, Esquire (hereinafter referred to as "Attorney Leake") was to "retrieve[] some kind of visitation with [Child]," and gain full custody of Jacob. Hr'g Tr. vol. 1, 147:20-25, 148:1-2. In this instance, the filing dates of Father's Petition for Modification of Custody and Mother's Petition speak for themselves. Father's Petition for Modification of Custody was filed on January 13, 2017. The Petition was filed on January 30, 2017, after Father's Petition for Modification of Custody. In the six months immediately preceding the Petition, Father actively sought custody rights to Child. Therefore, the Court does not find that Father demonstrated a settled purpose to relinquish parental rights to Child in the six months immediately preceding the Petition.

Father argues that he has paid child support to Mother for Child since the parties separated and that he continues to pay child support in compliance with the child support order.[4] Answer to Pet. ¶ 6. Mother testified that Father has paid child support for Child since 2008. Hr'g Tr. vol. 1, 52:8-13. Father further argues that paying child support, in and of itself, is sufficient grounds to defeat the Petition. Br. in Supp. of Resp. Answer 3 (citing *In re Adoption of Ostrowski*, 471 A.2d 541 (Pa. Super. Ct. 1984)). Mother argues that paying child support as required by court order was insufficient to defeat a petition to terminate parental rights. Br. in Supp. of Am. Pet. 6 (citing *In re Shives*, 525 A.2d 801 (Pa. Super. Ct. 1987)).

Pennsylvania law is clear that payment of child support, in and of itself, in compliance with a court order is not sufficient to defeat a petition to terminate parental rights. *See In re*

---

[4] Docketed at Somerset County Domestic Relations Number 0006117.

8

142

*Shives*, 525 A.2d 801 (Pa. Super. Ct. 1987). However, "[o]nly where the totality of the circumstances demonstrates clearly and convincingly that a parent has refused or failed to perform parental duties for a minimum period of six months may an order be entered terminating parental rights." *Shives*, 525 A.2d at 803. Part of that totality of the circumstances evaluation includes the fact that Father has paid child support for Child since the separation of Father and Mother in 2008. Although Father recently filed for a modification of support and he is no longer paying support for Child because Father now has primary custody of J      Father's payment of child support for Child since 2008 is one factor that illustrates that Father has not demonstrated a settled purpose to relinquish parental rights to Child.

Finally, Father maintains that there is a likelihood that he will be granted custody rights to Child at the upcoming custody trial on his Petition for Modification of Custody. Answer to Pet. ¶ 6. Father contends that there is a high likelihood that the court will grant him custody rights to Child at the upcoming hearing because Father has been providing for Child by paying child support, Father currently has de facto primary custody of Jacob, Child and     have a sibling bond, and Father is a good father to Jacob. *Id.* These are factors to be considered by the custody court in making the determination for modification of custody. As the Petition for Modification of Custody is not currently before the Court, this Court will not make a determination as to these facts but does take notice of the upcoming custody trial.

Petitioners' response to Father's argument that the 2012 No Contact Order prevented him from maintaining contact with Child is threefold: (1) Father had the opportunity to lift the order but did not comply with the Court in order to do so, (2) Courts can restrict a parent's contact with their children, and such restriction is applicable with regard to 23 Pa. C.S.A. § 2511(a)(1), and (3) Father cannot argue the force of the 2012 No Contact Order in regard to Child when he is not

9

abiding by the 2012 No Contact Order in regard to J.      Each argument will be analyzed in turn.

Petitioners argue that Father had the opportunity to lift the 2012 No Contact Order and have supervised contact with Child when the Court ordered the Initial Evaluation in 2013 in the underlying custody case. According to that Order:

> [A]t the time scheduled by the Court for Custody Trial, counsel for all parties having appeared and having concurred that an "Initial Evaluation" mandated by *23 Pa.C.S.A.§5329(c)* must be performed by the Court to determine whether [Father] poses a threat to the child[ren] and whether counseling is necessary. . . The Custody Trial scheduled for this date is CONTINUED to the February, 2014 Civil Trial Term. . . In the event that counseling is indicated as unnecessary, [Father] may approach the Court regarding supervised visitation in advance of the February trial term.

Order, Nov. 14, 2013, 858 CIVIL 2001(emphasis in original). Petitioners argue that the Court set forth the actions it required Father to take in order to grant Father custody of Child with this Order, and that because Father failed to provide the Initial Evaluation to comply with the Court's Order, he shows a settled purpose to relinquish those rights. Br. in Supp. of Am. Pet. 3-5.

Father testified that he did indeed submit himself to the Initial Evaluation by going to Carol Hughes' (hereinafter referred to as "Hughes") office.[5] Hr'g Tr. vol. 1, 133:20-23. However, in order to complete the Initial Evaluation, Father needed to show completion of the treatment he was currently participating in through CYS, which would not happen for some time after that visit. Hr'g Tr. vol. 1, 133:24-25. It was Father's understanding that Hughes was to fill out the necessary paperwork to complete the Initial Evaluation upon completion of Father's treatment. Hr'g Tr. vol. 1, 133:24-25. Father testified that although he completed treatment, something occurred on Hughes' end that resulted in the Initial Evaluation not being submitted to

---

[5] The November 14, 2013 Order directed Father to "submit to such Initial Evaluation forthwith before Carol A. Hughes, M.A. of *C.A. Hughes & Associates*, 410 South Maple Avenue, Greensburg, Pennsylvania."

10

the Court. Hr'g Tr. vol. 1, 133:24-25, 134:1-2. Father further testified that he believed the Initial Evaluation became a "non-issue" because Judge Geary had granted him visitation with J[6] and Child[6] despite the fact that the Initial Evaluation had not been submitted. Hr'g Tr. vol. 1, 132:12-18, 149:2-4, 20-21, 161:16-19, 167:22-24. Additionally, Father testified that because of the passage of time, he "totally forgot about [the Initial Evaluation]." Hr'g Tr. vol. 1, 149:20-21. It should also be noted that Father's legal counsel, Attorney Leake, believed, and consequently counseled Father as such, that in regard to the Initial Evaluation and Father's recently filed Petition to Modify Custody, "it was [his] legal analysis that [Father] would need to file a renewed Petition for Custody first [before submitting to the Court the Initial Evaluation from 2013] because circumstances have gravely changed since the 2013 custody [p]etition was filed." Hr'g Tr. vol. 2, 126:13-23.

The Court finds Father's testimony credible in that he believed the Initial Evaluation, as ordered in 2013, had become a "non-issue" in his pursuit to gain custody or visitation with Child. Although this belief is incorrect, it reasonably explains Father's actions in regard to the Initial Evaluation. In a letter from Matthew R. Zatko, Esquire (hereinafter referred to as "Attorney Zatko"), Father's legal counsel at the time, dated January 30, 2014, Attorney Zatko stated that Hughes was unable to complete the assessment of Father in time for the custody trial scheduled in February 2014. This letter supports Father's testimony that he in fact submitted to the Initial Evaluation, but that Hughes needed additional information in order to complete her report. Additionally, Father testified that once J[6] began to live with Father, Attorney Zatko advised Father "to not shake the tree," in regard to attempting to obtain custody of Child. Hr'g Tr. vol. 1, 135:1-8. Father understood that to mean that if he tried to pursue custody of Child, Mother could potentially take legal action to remove J[6] from his custody, and he would be left without

---

[6] After thorough review of the underlying custody case, such an Order was not found.

11

custody or visitation of either of his children. Hr'g Tr. vol. 1, 135:1-8. Father's lack of action to see that the Initial Evaluation was submitted to the Court is consistent with his adherence to this legal advice. Furthermore, once Father retained Attorney Leake, it is consistent with Attorney Leake's legal advice that Father must file a renewed petition to modify custody before submitting himself to an additional Initial Evaluation.

This Court therefore finds Petitioners' argument that Father demonstrated a settled purpose of relinquishing his parental rights in not completing the Initial Evaluation not persuasive. To establish a settled purpose to relinquish a parental claim, the petitioner seeking to terminate parental rights must show that the parent made a deliberate decision to terminate the parent-child relationship throughout the statutory six-month period. *Adoption of M.S.*, 664 A.2d 1370, 1373 (Pa. Super. Ct. 1995). First, the initial delay in submitting the Initial Evaluation to the Court occurred because Father needed time to complete treatment in order for Hughes to complete her report. Attorney Zatko's letter supports Father's testimony that he submitted to the Initial Evaluation, but that it could not be completed before the time scheduled for the custody trial. Second, Attorney Zatko and Attorney Leake's legal advice supports Father's testimony as to why he did not pursue the completion of the Initial Evaluation in the meantime. Father's submission to the Initial Evaluation, but lack of persistence in pursuing receipt of the Initial Evaluation and submission to the Court demonstrates Father following the legal advice of his counsel rather than a deliberate decision to relinquish his parental rights to Child. The Petitioners' therefore have not shown through clear and convincing evidence that Father demonstrated a settled purpose of relinquishing parental rights to Child by not submitting the Initial Evaluation to the Court.

Petitioners' next make the argument that Courts can restrict a parent's contact with their

12

children, and such restriction is applicable to the demonstrated settled purpose of relinquishment analysis with regard to 23 Pa. C.S.A. § 2511(a)(1). Petitioners' first cite to incarceration as an example of when the Court restricts a parent's contact with his or her children. While incarceration, in and of itself, does not constitute grounds sufficient to terminate parental rights, a parent "must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to their best ability." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. Ct. 2000). Petitioners' next cite to Juvenile and Child Protective Services areas as other examples of when a Court can restrict a parent's contact with his or her children and use that restriction in the 23 Pa. C.S.A. § 2511(a)(1) analysis.

However, the Court does not find Petitioners' argument persuasive in this respect. While Father was incarcerated for a period of time, a no contact order was in place as part of the sentencing conditions in his criminal case. This no contact order remained in place until Father successfully completed his incarceration and parole. Father's "best ability" to maintain a parent-child relationship with Child while he was incarcerated and serving his parole was completely limited by that no contact order that carried with it criminal consequences. Furthermore, Father promptly filed a petition to modify custody as soon as he completed all the requirements of his sentencing. Additionally, in the context of this Petition, Child is not subject to the Juvenile or Child Protective Services areas. Therefore, those areas of law are not relevant to the determination of the Petition currently before the Court. While it is understood that the Court can limit a parent's contact with his or her child and take that restriction into consideration when completing a 23 Pa. C.S.A. § 2511(a)(1) analysis, the areas of law set forth by Petitioners' are not relevant and therefore, the Court will not analyze whether Father demonstrated a settled purpose of relinquishing his parental rights to Child under these areas of law.

13.

It is clear that when determining whether to terminate parental rights, the parent's efforts in maintaining a relationship with the child must be evaluated in light of obstacles confronting that parent. *In re J.G.J.*, 532 A.2d 1218, 1222 (Pa. Super. Ct. 1987). In the instant case, at all times from 2009 forward, Father was confronted with a no contact order in regard to Child. Therefore, Father's effort in maintaining his relationship with Child must be evaluated in light of this no contact order as an obstacle. Despite the 2012 No Contact Order, Father filed a Petition for Modification of the Current Custody Order on July 9, 2013 and a Petition for Modification of Custody on January 13, 2017. Albeit unsuccessful up to this point, Father has taken concrete steps to modify the 2012 No Contact Order in order to reestablish ties with Child, which is inconsistent with a settled purpose to relinquish his parental rights and defeats a petition to terminate Father's parental rights to Child. *See In re Adoption of R.J.S.*, 901 A.2d 502, 508-09 (Pa. Super. Ct. 2006)(holding termination of parental rights was proper where evidence showed father took no concrete steps to modify the custody order containing a no contact order with his children). Although the Court can limit a parent's contact with their child and then use that limitation as a basis to terminate his or her parental rights, the Court is unable to do so in this case. Although Father has not been perfect in his pursuit of custody of Child, he has taken concrete steps to modify the 2012 No Contact Order to permit him to have contact with Child.

Finally, the Petitioners' argue that Father cannot argue the force of the 2012 No Contact Order in regard to Child when he is not abiding by the 2012 No Contact Order in regard to J Petitioners' contend that Father cannot argue that the Order prevents him from having contact with Child while Father is having regular contact with J       , whose contact is also controlled by the same Court Order. Petitioners' further claim that Father was choosing one child over the other when he allowed J    to stay in his home while not pursuing custody of Child. Hr'g Tr.

14

vol. 2, 138:5-11.

Again, on January 30, 2012, the Court entered the 2012 No Contact Order between Father and J̶ and Child. Father was prohibited from having any contact whatsoever with J̶ and Child until further order of the Court. In May of 2014, J̶ was no longer able to live with Mother. As much as the record shows, J̶ had nowhere else to go besides to his Paternal Grandparents' house. It was openly known that Father resided in the same home as Paternal Grandparents. It was made known to CYS and the Court that J̶ would then be living with Paternal Grandparents and Father, and no objection was made to the arrangement. In fact, it appears that CYS and the Court acquiesced in this arrangement.

Father testified that J̶ moved into his home between the last two continuances of the custody trial in which Father was pursuing custody of J̶ and Child. Hr'g Tr. vol. 1, 134:20-25. Again, Father further testified that Attorney Zatko had advised him to "not shake the tree." Hr'g Tr. vol. 1, 135:1-8. This Court finds Father's testimony credible in that he genuinely believed from his counsel's advice that if he were to continue to pursue custody of Child, Mother would file a contempt petition against Father and have J̶ removed from his custody, resulting in Father unable to see either of his children. It was only after Father retained Attorney Leake in December of 2016 and was advised that it was unlikely that the Court would remove J̶ from Father's custody that Father again filed for a custody modification of Child. This action is consistent with Father's fear of losing J̶ in the pursuit of custody of Child. It should be noted that this Court understands that "[a]n attorney's advice is not sufficient justification for refusal or failure of parent to visit child." *In re Adoption of Y.S.*, 408 A.2d 1373 (Pa. 1979). However, in this case, Father didn't simply refuse to see Child, he was forbidden to do so by the 2012 No Contact Order. Attorney Zatko's advice was not to advise Father not to

15

149

see Child while Father had an opportunity to do so, but rather to be strategic in when and how Father chose to go about obtaining custody of Child. Therefore, this Court finds Petitioners' argument that Father cannot use the force of the 2012 No Contact Order because he is in violation of the order to be without merit.

Additionally, Petitioners' assertion that Father simply chose one child over another assumes that Father has not tried to make contact with Child or otherwise gain custody of Child since the 2012 No Contact Order was put into place. This assertion is false. Both Mother and Father testified that Father appeared to watch both Jᵣ    and Child play soccer through the American Youth Soccer Organization (hereinafter referred to as "AYSO") program in the summer of 2015. Hr'g Tr. vol. 1, 50:1-10; 146:6-19. It is important to note that this event occurred after Father completed his sentencing, in which he was not allowed to have contact with any child under the age of eighteen (18). The only no contact order in place during this event was the 2012 No Contact Order in which Father was not to have contact with his own children. Additionally, Father had de facto custody of Jᵣ    the time of this incident, and Jᵣ   was also playing soccer that day and present at the field. As a response to Mother being alerted to Father's presence at the soccer field, AYSO officials confronted Father, the Pennsylvania State Police were contacted, and Father was escorted off the soccer field. Hr'g Tr. vol. 1, 50:1-10; 146:6-19. Additionally, in January 2017, Child was given a birthday card by Paternal Grandparents, inside of which was written that the card was from Father. Hr'g Tr. vol. 1, 58:18-25; 59:1-2. At the same visit in January of 2017, Child was given gifts that Paternal Grandparents stated were from Father. Hr'g Tr. vol. 1, 65:23-25. As a response to that card and those gifts, Mother filed an Emergency Petition to Suspend Partial Custody, Modify Custody, and Contempt of Custody Order against Paternal Grandparents. Hr'g Tr. vol. 1, 58:18-25; 59:1-

16

2, 65:23-25; 66:1-4. This Court does not find Petitioners' argument persuasive that Father simply chose one child over the other because Father has tried to have contact with Child despite the 2012 No Contact Order, but was prevented from doing so by Mother.

### 23 Pa. C.S.A. § 2511(a)(11): Requirement to Register as a Sexual Offender

Petitioners argue that Father is required to register as a sexual offender under 42 Pa. C.S. Ch. 97 Subch. H (relating to registration of sexual offenders). Petitioners further argue that because Father is required to register as a sexual offender, this Court should terminate his parental rights to Child in accordance with 23 Pa. C.S.A. § 2511(a)(11), which states:

> (a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (11) The parent is required to register as a sexual offender under 42 Pa. C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

Petitioners contend that because Child is of the same age and gender as I‑I , when Father committed Indecent Assault against I‑I and also because Father has not provided the required Initial Evaluation, Child's best interests would be served by terminating Father's parental rights.

While Father does not deny that he is required to register, Father does deny that it would be in Child's best interests to terminate his parental rights to Child. Answer to Pet. ¶ 22. Father argues that he continues to pay child support and maintains a family unit with himself, J and Paternal Grandparents that Child could be a part of. Id. Additionally, Father emphasizes that the victim of the Indecent Assault was not Child. Id. at New Matter ¶ 29.

This subsection to § 2511 was added effective October 28, 2016. Upon review, this Court was unable to find a case in which this subsection was used and its legal analysis for doing so. However, § 2511(a) states that the rights of a parent "may" be terminated on the grounds that

17

a parent is required to register as a sexual offender. Therefore, this Court is not required to terminate Father's parental rights to Child simply because he is required to register as a sexual offender.

Other than Father's conviction for Indecent Assault against a victim that was the same age and gender as Child is now, Petitioners offered no other evidence that would support the Court's determination to terminate Father's parental rights to Child under this provision. In considering Father's requirement to register the Court takes notice that "[Father] has served his time, and complied with all necessary registration and probationary requirements of [his] sentence. The offense that [Father] was convicted of did not involve [Child], nor has there been any implication that [Father] has abused either [Child] or J⋅ ⸏ ⸏ ⸏. Rep. of GAL 4. Because the statute allows, but does not require the Court to terminate Father's parental rights due to his requirement to register as a sexual offender, this Court retains discretion in determining whether to terminate or not. Father has demonstrated a settled purpose to regain custody of Child and has fully completed the terms of his sentencing. Therefore, the Court does not find by clear and convincing evidence that it would be in Child's best interest to terminate Father's parental rights simply because he is required to register as a sexual offender.

### 23 Pa. C.S.A. § 2511(b): Parent-Child Bond

As stated above, the Petitioners' have failed to establish by clear and convincing evidence that Father has demonstrated a settled purpose to relinquish his parental rights to Child under 23 Pa. C.S.A. § 2511(a)(1). Additionally, the Petitioners' have failed to establish by clear and convincing evidence that Father's parental rights should be terminated under 23 Pa. C.S.A. § 2511(a)(11). Therefore, the Court cannot, and does not, continue on to the 23 Pa. C.S.A. § 2511(b) analysis. *See In re L.M.*, 923 A.2d 505, 511 (Pa. Super. Ct. 2007).

18

## Conclusion

It is clear that Father is not a perfect father figure. However, 23 Pa. C.S.A. § 2511(a) does not require that Father be a perfect father figure. 23 Pa. C.S.A. § 2511(a) does require a showing by clear and convincing evidence that Father has demonstrated a settled purpose of relinquishment of his parental rights to Child in order for this Court to grant the Petition. While Father is not perfect, Father has actually demonstrated a settled purpose to regain custody of Child and exercise his parental rights with respect to Child. Again, while not perfect in his pursuit to regain custody of Child, Father has filed two petitions to modify custody in order to allow him to have contact with Child. The most recent Petition for Modification of Custody was filed two weeks in advance of the Petition to Involuntarily Terminate Father's parental rights to Child. This Court cannot ignore the timeline that shows Father actively sought custody of Child in the six months preceding the Petition. Furthermore, the Court understands that Father is required to register as a sexual offender under 42 Pa. C.S. Ch. 97 Subch. H. However, the Court does not believe that his requirement to register, in and of itself, constitutes grounds to terminate his parental rights in this case as Father successfully completed his sentencing for that conviction, the victim was not Child, and Father clearly loves Child and wants to be a part of her life. Therefore, the Court denies Petitioners' Petition and Amended Petition.

Accordingly, we enter the following order:

19